STATE of Iowa, Appellee,

v.

Thomas Francis McMANUS, Appellant.

No. 58281.

Supreme Court of Iowa.

June 30, 1976.

Johnston, Penney & Goetz and Emmit J. George, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and Jack W. Dooley, County Atty., for appellee.

REES, Justice.

Defendant was charged by county attorney's information with the crime of possession of a controlled substance, specifically, marijuana, with intent to deliver the same in violation of § 204.401, The Code, 1973. Following the entry of his plea of not guilty he was tried to a jury and convicted. He sought and was granted an accommodation hearing under the provisions of § 204.410, The Code. After hearing to the court without a jury, the court found the defendant had not established by clear and convincing evidence the offense involved was an accommodation offense, and sentence was imposed. Defendant appeals. We reverse and remand for a new trial.

Defendant was arrested after a warranted search at his residence yielded about 35 to 45 pounds of marijuana. Prior to trial defendant filed a demurrer, alleging the unconstitutionality of the statutory scheme which is encompassed by § 204.401 and § 204.410, The Code, as they existed at that time. The constitutional challenges raised by defendant here were substantially identical to those raised in *State v. Monroe,* 236 N.W.2d 24 (Iowa 1975). Trial court overruled defendant's demurrer.

Defendant also filed a motion to suppress the fruits of the warranted search of his residence, but following hearing the trial court overruled the motion to suppress in its entirety.

Trial to a jury resulted in a verdict finding defendant guilty of the offense charged. As noted above, defendant was granted an "accommodation" hearing pursuant to Code § 204.410. Following the accommodation hearing, trial court held defendant had failed to establish by clear and convincing evidence that he "possessed with intent to deliver a controlled substance only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to become addicted to or dependent upon the substance."

On May 7, 1975, trial court sentenced defendant to be confined for a term of not to exceed five years at the Men's Reformatory. Defendant was also fined $100. This appeal ensued.

Defendant states for review the following issues:

(1) Did probable cause exist for the issuance of the warrant to search defendant's residence.

(2) Are §§ 204.401 and 204.410, The Code, 1973, unconstitutional as applied to the defendant in this case.

I. In his first issue stated for review defendant challenges the validity of the search warrant under which the marijuana was seized.

The warrant was issued on the application of W. M. Cook, a police officer for the city of Iowa City. Cook's sworn information set out the following facts which, he contended, led him to believe there was probable cause for the issuance of the warrant:

"(A) Facts of which I have personal knowledge without using an informant:
"(a) Facts: On the morning of November 1, 1974, the affiant conducted surveillance on a white 1963 Dodge, 81–6057, while it was engaged in a sale of approximately 20 pounds of marijuana.

"Followed vehicle to a location approximately one and a half miles east of Atalissa, Iowa, on Highway 6 where this vehicle met with a blue Van driven by Deputy Warner of Muscatine County Sheriff's Department. Watched vehicle leave the area and go to a farmhouse located Lone Tree, RR, Section 23 of Lincoln Township, Johnson County, Iowa, or a farmhouse located approximately one and one quarter miles west of the Johnson County–Muscatine County line on the Hills Blacktop (approximately 75 feet east of the Howard Krueger residence).

"(b) Witnessed vehicle return to Atalissa area and meet again with the blue Van driven by Deputy Warner. Witnessed arrest of Novak and Goodrich for the delivery of marijuana to Deputy Warner.

"(B) Facts told to me by an informant:

"(a) At approximately 10:15 p. m. on October 31, 1974, the affiant was contacted by Deputy Warner of the Muscatine County Sheriff's Office. Warner advised that he had an undercover purchase of marijuana scheduled for 9 o'clock a. m. on November 1. 1974. He stated that a subject known to him as Scott Goodrich would meet him at a weight scales located approximately one mile east of Atalissa, Iowa. If everything was okay, Goodrich would leave his girlfriend with Warner while he (Goodrich) left to pick up the marijuana.

"At approximately 9:15 a. m. on November 1, 1974, the affiant was contacted by Deputy Warner and advised that he had just had conversation with Goodrich, and that Goodrich was unable to make his contact for the marijuana and would try again at approximately 10:30 a. m. and meet with Deputy Warner once more at 11:15 a. m. at the same location.

"Warner had previously advised the affiant that he would be equipped with a portable radio and that if everything went according to schedule, he would not contact the affiant until the time of the arrest. Otherwise, if something had gone wrong, the affiant would be notified immediately."

The affiant for the warrant also stated on the sworn information that the authorities did not know at that time who occupied the residence which was later determined to be occupied by defendant.

Officer Cook also presented sworn oral testimony in connection with his application for the search warrant. Such testimony was abstracted by the issuing magistrate on his endorsement to the warrant application as follows:

"William M. Cook, 3021 Raven St., Iowa City, was contacted by Deputy Warner of Muscatine County. Said he'd made arrangement to buy MJ from one Scott Goodrich. Found Goodrich's local address to be 730 Michael St. Warner had described car with license 81–6057 which was located at Michael St. address about 5:15 A.M., 11–1–74. From 8:10 A.M. kept vehicle under surveillance.

"Was in radio contact with Deputy Warner by plane which W was in.

"Goodrich returned to I.C. for 1 hr. Then returned to Atalissa, met van, then left and went to farm in Lone Tree area, returned to Atalissa, advised by radio that 20 lbs. of MJ changed hands.

"Doesn't know who owns farm but it is rented."

■ We must determine the validity of the search warrant only upon the facts recited in the affidavits and the abstracts of oral testimony endorsed on the application; it cannot be rehabilitated or fortified by later testimony. *State v. Easter*, 241 N.W.2d 885, 886 (Iowa 1976); *State v. Liesche*, 228 N.W.2d 44, 48 (Iowa 1975).

■ The question before us is whether probable cause existed for the issuance of the warrant. Probable cause exists when the facts and circumstances presented to the judicial officer are sufficient in themselves to justify the belief of a reasonably cautious person that an offense has been or

is being committed. *State v. Easter, supra; State v. Birkestrand,* 239 N.W.2d 353, 356 (Iowa 1976); *State v. Boer,* 224 N.W.2d 217, 219 (Iowa 1974). The issuing officer cannot rely on mere conclusions to determine that probable cause exists. *State v. Easter, supra; State v. Boer, supra.*

We are persuaded in the instant case that the facts and circumstances upon which the issuance of the warrant was based fell short of establishing probable cause for the issuance of the warrant.

The sworn affidavit and abstract of oral testimony showed only that Goodrich stopped at defendant's farmhouse between the time he met with Deputy Warner and the time he delivered the marijuana to the deputy. We do not hesitate to say the visit by Goodrich to the farmhouse, along with his earlier mention of a "contact," cast upon defendant a certain aura of suspicion. Probable cause, however, requires more than mere suspicion. *State v. Birkestrand, supra,* 239 N.W.2d at 357; *State v. Shea,* 218 N.W.2d 610, 614 (Iowa 1974).

Our problem with the facts of this case is that there was nothing beyond the mere coincidence of timing of the visit of Goodrich to the McManus farmhouse to connect defendant with any wrongdoing. There was no indication from the affidavit for the search warrant or the abstract of the oral testimony that Goodrich's auto did not already contain the marijuana before his visit to the farmhouse, that Goodrich took anything from the farmhouse to his car while there or that he even opened the trunk of the vehicle at any time he was at the farm. There was no indication of any independent information linking defendant to wrongdoing, of which the events of November 1 might have been corroborative. There was no indication that Goodrich or anyone else provided information tending to incriminate defendant. Defendant himself was apparently not observed on November 1; the information for the search warrant indicated the affiant did not know who occupied the house near Lone Tree. There was no indication of any other suspicious visits to defendant's home.

The observations comprising the heart of the information for the search warrant in the instant case are similar in quality to observations tested for probable cause by the United States Supreme Court in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. In *Spinelli* the affidavit contained, *inter alia,* the following representations [abstracted in the Court's opinion]:

"1. The FBI had kept track of Spinelli's movements on five days during the month of August 1965. On four of these occasions, Spinelli was seen crossing one of two bridges leading from Illinois into St. Louis, Missouri, between 11 a. m. and 12:15 p. m. On four of the five days, Spinelli was also seen parking his car in a lot used by residents of an apartment house at 1108 Indian Circle Drive in St. Louis, between 3:30 p. m. and 4:45 p. m. [footnote omitted]. On one day, Spinelli was followed further and seen to enter a particular apartment in the building.

"2. An FBI check with the telephone company revealed that this apartment contained two telephones listed under the name of Grace P. Hagen, and carrying the numbers WYdown 4–0029 and WYdown 4–0136." 393 U.S. at 413–414, 89 S.Ct. at 587.

The Supreme Court in *Spinelli* held the observations, even taken in connection with an informant's tip [ultimately held to be lacking in sufficient support], fell short of the standard of probable cause. In particular, the Court said of the above observations:

"The first two items reflect only innocent-seeming activity and data. Spinelli's travels to and from the apartment building and his entry into a particular apartment on one occasion could hardly be taken as bespeaking gambling activity; and there is surely nothing unusual about an apartment containing two separate telephones. Many a householder indulges himself in this petty luxury." 393 U.S. at 414, 89 S.Ct. at 588.

In the instant case, Goodrich's stop at the farmhouse, even with its hint of suspicion

due to the timing of the visit, was insufficient, without more, to support a finding of probable cause that defendant had committed or was committing an offense. Such a visit was sufficiently consistent with innocent behavior and activity that more was needed for the issuance of the warrant. We have said that innocent-appearing activity cannot be used to bolster an otherwise inadequate warrant application. *State v. Easter, supra; State v. Boer, supra,* 224 N.W.2d at 221.

■ It appears the suspicions of the law enforcement authorities in this case were substantially confirmed by the search. Defendant's residence was found to contain a substantial amount of marijuana. Nonetheless, a search is good or bad when it starts and does not change character because of its success. *State v. Spier,* 173 N.W.2d 854, 858 (Iowa 1970); *State v. Hagen,* 258 Iowa 196, 205, 137 N.W.2d 895, 900.

■ In a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall. *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684. Law enforcement authorities should be encouraged to seek warrants. Nonetheless, we are constrained to say the search warrant here was not properly issued.

■ We hold the showing in this case was insufficient to establish probable cause for the issuance of the search warrant. Accordingly, the trial court erred in overruling defendant's motion to suppress the evidence yielded by the warranted search.

II. Our holding above renders unnecessary a consideration of defendant's second issue stated for review. In any event, the pronouncements of this court in *State v. Monroe, supra,* would appear to answer all of the questions posed by the second division of defendant's brief and argument.

For the reasons stated in Division I above, we must reverse.

This case is therefore reversed and remanded for a new trial.

REVERSED AND REMANDED.

MOORE, C. J., and MASON, RAWLINGS and LeGRAND, JJ. concur.

UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ. dissent.

UHLENHOPP, Justice (dissenting).

I. Probable cause exists for issuance of a search warrant if facts supplied to the issuing officer are sufficient to cause a reasonably cautious person to believe a crime has been or is being committed. *State v. Birkestrand,* 239 N.W.2d 353, 356 (Iowa). In this case, Office Cook's sworn information and testimony presented to the magistrate the following facts, based upon Cook's own knowledge and what he was told by another officer, Deputy Sheriff Daryl Warner: (1) Scott Goodrich had arranged a meeting with Warner for the morning of November 1, 1974, at which Goodrich would deliver marijuana to Warner; (2) Goodrich was to meet Warner near Atalissa, Iowa, and leave his girl friend with Warner while he went to pick up the marijuana; (3) about 9:00 a. m. Goodrich told Warner he had failed to make his contact for the marijuana but would try again at about 10:30 a. m., and would meet Warner again near Atalissa at about 11:15 a. m. (this established that Goodrich did not yet have the marijuana at 9:00 a. m.); (4) Goodrich met Warner again near Atalissa; (5) Goodrich drove to the farmhouse in question near Lone Tree, Iowa, and shortly returned to his rendezvous with Warner; (6) Goodrich delivered to Warner approximately 20 pounds of marijuana, and was arrested.

I believe from these facts one could reasonably infer that Goodrich very likely obtained the 20 pounds of marijuana at the farmhouse. The timing of Goodrich's visit to the farmhouse, which the court calls "mere coincidence," is highly probative. The large quantity involved indicated the existence of a big dealer, so that more marijuana might very well be on hand at the farmhouse. I think a reasonably cautious person could reasonably conclude from these facts that marijuana would be found in the farmhouse, and that probable cause therefore existed to issue the search warrant.

The court notes in its opinion that defendant himself was not observed before the warrant was issued, and that the officers did not know who occupied the house. This appears irrelevant. The warrant was not issued against any particular person, but against the "person or persons unknown" who occupied the farmhouse. The evidence pointed to the presence of marijuana in the farmhouse, regardless of who lived there.

The court also states, relying upon the *Spinelli, Easter,* and *Boer* cases, that "innocent-appearing activity cannot be used to bolster an otherwise inadequate warrant application"; and since Goodrich's stopping at the farmhouse was consistent with innocent behavior, the stopping cannot by itself support a finding of probable cause to search the farmhouse.

I think the cited cases say, rather, than an informant's *conclusions* regarding illegal activity cannot be given weight because "corroborated" by activity in itself innocent. "Insofar as relevant here, the *Spinelli* court held the standard of *Aquilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723] prohibiting issuance of a warrant upon mere presentation of conclusions regarding illegal activity cannot be met by adding corroborative detail regarding innocent-seeming activity to those conclusions." *State v. Boer,* 224 N.W.2d 217, 220–221 (Iowa). In *Boer,* an informant made the unsupported assertion that a man named Jack Van Zee was expecting a suitcase with narcotics in it at the municipal airport. The State argued that the fact a man named Jack Van Zee was expecting a suitcase at the airport corroborated the informant's story. The court said "The additional data provided . . . was innocent-appearing . . . [and] cannot be added to the recital of the informant's conclusion regarding illegal activity to establish probable cause." *State v. Boer,* supra, at 221. In *Easter,* an informant similarly said two subjects named S. Kerns and W. Kerns would fly into Des Moines with suitcases containing marijuana. This court said:

At the outset we note [the affiant] recited he corroborated the fact S. Kerns and W. Kerns had reservations on the flight specified by [the informant]. We do not rely on this corroboration, however; such activity is entirely innocent and cannot be used to bolster an otherwise inadequate warrant application. *State v. Easter,* 241 N.W.2d 885, 887 (Iowa).

The reasoning of *Spinelli, Boer,* and *Easter* does not apply in the instant case. The innocent activity here—Goodrich's stopping at the farmhouse—is not used to corroborate an informant's conclusion that there was marijuana in the farmhouse. No informant told Officer Cook there was marijuana in the farmhouse. The cited cases are inapposite.

Here the innocent-appearing activity—Goodrich's stopping at the farmhouse—was but *one* fact from which Officer Cook reasonably inferred the existence of marijuana in the house. I do not think that *Spinelli, Boer,* and *Easter* mean that only activity which is *in itself illegal* may be considered in determining whether probable cause exists. Even though Goodrich's stopping at the farmhouse was in itself innocent, *in the context of other facts known to Officer Cook it was highly probative of illegal activity.* As such, it could be properly considered in determining the existence of probable cause.

II. Because I would affirm on the probable cause issue, I must, unlike the court, reach defendant's second contention. At the accommodation hearing the burden was placed upon defendant to prove the fact of accommodation. This was error under *State v. Monroe,* 236 N.W.2d 24 (Iowa). Error was properly preserved. I would reverse and remand for a new accommodation hearing in accordance with *Monroe.*

REYNOLDSON, HARRIS, and McCORMICK, JJ., join in the dissent.