UNITED STATES of America, Plaintiff,

v.

Joseph R. LaFOND and Charles T. Monty, Defendants.

No. 79–CR–163.

United States District Court, E. D. Wisconsin.

Jan. 30, 1980.

James M. Fergal, Patricia J. Gorence, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff.

John D. Hanson, Van Metre, Hanson, Clarke & Schnitzler, Madison, Wis., for LaFond.

David Rothstein, Milwaukee, Wis., for Monty.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a criminal case in which the defendants are charged with conspiring to distribute cocaine and the unlawful possession of cocaine with the intent to distribute. Defendant Joseph LaFond has filed several pretrial motions. Defendant seeks to suppress all physical evidence seized from his residence pursuant to a search warrant on the grounds that there was no probable cause for the issuance of the warrant. In connection with this, he seeks also to suppress all statements made by him to law enforcement agents on the ground that the arrest was a fruit of an illegal search. Defendant has also moved to dismiss counts three and four of the indictment alleging they are multiplicious and violative of the double jeopardy provisions of the Fifth Amendment. Furthermore, he has requested that the government make a full disclosure of all its records in this matter, including the original tape of the oral search warrant proceeding. The final motion is a motion for separate trials. These motions are the subject of this memorandum and order.

## MOTION TO SUPPRESS

Defendant has raised many issues in his motion to suppress the evidence seized at his house. Defendant claims: that the magistrate lacked probable cause to issue the warrant; and that the procedure used in issuing the warrant was defective because the magistrate did not verify or certify the transcript or the oral proceeding and because there is a gap of approximately one minute on the tape which is unaccounted for.

The Court begins its inquiry with Rule 41 of the Federal Rules of Criminal Procedure. Rule 41 provides that a warrant shall issue only upon a showing of probable cause. The requirement of probable cause for the issuance of a warrant is designed to protect citizens from unreasonable searches and seizures. *See* U.S.Const. Amend. IV. It envisions that a neutral and detached magistrate will examine the evidence and make a determination solely from the evidence presented before him whether probable cause exists to issue the warrant. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

Probable cause for the issuance of a search warrant does not require that the magistrate be convinced beyond a reasonable doubt that a crime is being committed. It only requires some probable belief that a crime has or is being committed. *See Ventresca v. United States*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In determining probable cause from an affidavit or sworn oral statement, however, the magistrate must be informed of the facts and circumstances which the affiant believes constitute probable cause. In addition, if the information or facts come from an informant, the magistrate must be made aware of facts which would indicate the informant's reliability and credibility. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The purpose of these requirements is to insure that the magistrate's decision is based on facts and not unsupported conclusions of those involved in law enforcement.

In the instant case, on October 29, 1979, the Assistant United States Attorney applied for an oral search warrant under the provisions of Rule 41(c)(2). The oral proceeding on the warrant was held in the magistrate's chambers and the magistrate administered the oath to the affiant Agent Jack Walsh of the Drug Enforcement Administration (DEA). His testimony before the magistrate was recorded and the certified transcript relates the following facts.

Agent Walsh and Agent Stacy, another DEA agent, on the days prior to October 29, 1979, had been involved in negotiating with defendant Monty to purchase two kilograms of cocaine. On Sunday, October 28, 1979, Monty informed Agent Stacy that he had the cocaine and offered to deliver it that night. Agent Stacy, however, told Monty he would have to wait until the following day so he could get the money together. The next morning, on Monday, October 29, 1979, Agent Stacy again spoke with Monty, and Monty agreed to contact his source of supply and try to purchase the two kilos. Around one o'clock that afternoon, Agent Stacy met with Monty at a local bar and Monty agreed to go to his source and purchase one-half an ounce of cocaine from the two kilos. Stacy provided Monty with $1,000.00 to purchase the cocaine.

When Monty left the tavern, he was followed by members of DEA and the Wisconsin Division of Criminal Investigation to the vicinity of 1710A and 1712A West Mineral Street. Agents observed him enter the duplex, but were unsure which door he entered because they did not actually see him go in the back door. Nor did they see which door he exited from, but agents did follow him back to the bar where he delivered one-half ounce of cocaine to Agent Stacy. When he delivered the cocaine, he told Stacy that he observed one kilo of cocaine at his source's apartment and that Stacy should contact him at another bar when he raised the money for the cocaine.

Meanwhile, because the agents were unable to observe which door Monty went in, they made a phone check of both addresses and checked the license of the car at 1712A. The phone check revealed that an elderly woman was at 1710A and a man at 1712A. Milwaukee police officers also observed a man standing out front of 1712A who they observed going into 1712A and out again. When he left, he was followed and Agent Walsh stated he was cruising around in the neighborhood in his car in a suspicious manner.

While the agents were trying to determine what door Monty went in, Stacy called Monty at the other bar. Monty told Stacy that his source was perturbed and that he was not home. At that point, agents called 1712A and there was no answer. In addition, they observed an unsigned note on the door of 1712A to Monty telling him he went out and to call him at home.

After this testimony, there is a gap on the tape and the testimony resumes indicating that the tape had been stopped for approximately a minute. The remainder of the tape only clarifies the time sequence of the above events.

On the basis of Agent Walsh's statement, Magistrate LaFave issued a search warrant for 1712A West Mineral Street, Milwaukee, Wisconsin.

Defendant asserts there was no probable cause to issue the warrant because there was no evidence before the magistrate of Agent Walsh's or Stacy's reliability or that the substance was, in fact, cocaine. Defendant also contends that there was no evidence of Monty's reliability. Because of the alleged lack of showing of reliability, defendant asserts that agent Walsh's oral affidavit did not comply with the *Aguilar* or *Spinelli* standard.

In response, the government contends that the *Aguilar* and *Spinelli* standard does not apply because the facts establishing probable cause do not come from an informant, but from the personal observations of government agents. Because Stacy and Walsh and other agents were not informants, the government contends that there is no need for a showing of reliability. Alternatively, the government asserts that the reliability of the agents was known to the magistrate. This contention, however, conflicts with the rule that probable cause

must appear from the affidavit, not from outside personal observations.

Defendant asserts that the *Aguilar* and *Spinelli* standard applies in all circumstances. Defendant attempts to classify all persons as informants, thus making *Aguilar* and *Spinelli* applicable.

■ Defendant's assertion that all persons providing information are "informants" under *Spinelli* and *Aguilar* is erroneous. A review of the major Supreme Court decisions in the area indicates that the Court has been concerned with a person's reliability only when that person's identity has not been revealed to the magistrate or when a person is connected with the crime involved or known to associate with criminals. *See United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (informant trafficker in illegal liquor); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (informant unknown); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (informant unknown); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (informant underworld type). For cases where reliability has not been an issue see *Jaben v. United States*, 381 U.S. 214, 223–24, 85 S.Ct. 1365, 1370–71, 14 L.Ed.2d 345 (1965) (information from cooperative citizen); *Ventresca v. United States*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (information from police officer); *Brown v. United States*, 126 U.S. App.D.C. 43, 365 F.2d 976 (D.C.Cir.1966) (information from crime victim). *See also Commonwealth v. Martin*, ── Mass. ──, 381 N.E.2d 1114, 1117 (1978); J. Israel and W. LaFave, *Criminal Procedure In a Nutshell* at 105 (1975).

■ The *Aguilar* rule does not require that the government prove the reliability of government agents, police, or citizens who have come forth openly to tell what they know or who have responded to questions from the police. These persons are inherently more reliable than unknown, unnamed informants or those connected with the crime in some way. The later types are the ones that the *Aguilar* and *Spinelli* standard is directed to.

■ In addition, the Court notes that in other situations, courts have differentiated between informants and others who provide information. In *Gordon v. United States*, 438 F.2d 858, 875 (5th Cir.), *cert. denied*, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 58 (1971), the court defined an informant as:

> an undisclosed person who confidentially volunteers material information of violations of the law to officers charged with enforcement of that law . . . persons who supply information only after being interviewed by police officers, or who give information as witnesses during the course of an investigation, are not informers.

On the basis of the above, the Court finds that the reliability of Agents Walsh, Stacy and the other law enforcement agents who observed the facts related does not need to be demonstrated other than from a showing that they were acting in their normal capacity which is clear from the facts.

■ The facts and circumstances related by Agent Walsh indicate that there was probable cause to believe that cocaine was present at 1712A West Mineral Street. The agents were able to show that it was probable that Monty went into 1712A and got the cocaine there. Monty was under continuous supervision and, therefore, the cocaine delivered to Stacy, it is reasonable to presume, came from 1712A.

■ That the agent did not field test the substance does not, in the Court's opinion, affect the magistrate's finding of probable cause. The defendant has cited no cases in support of his position that the agent should have presented evidence of a field test to substantiate his belief it was cocaine. The Court, in any case, does not find that such a test is required or necessary. It is sufficient at this stage in the proceedings that the DEA agent believed that it was cocaine. As stated earlier, probable cause does not require certainty, only reasonable belief. The Court finds the magistrate, in this instance, had a reasonable belief that the substance was cocaine and, therefore, that a crime was being committed.

With respect to defendant Monty's statement, no objective evidence of his reliability was presented to the magistrate. His statement, however, was appropriately considered by the magistrate because it comes within the standard set out in *Aguilar* and *Spinelli.* His statement itself indicates how he knew of the cocaine because he said he personally saw it. His reliability is affirmed by his involvement in the criminal activity. The statement, therefore, may be considered as an admission against interest. *United States v. Harris,* 403 U.S. at 583–84, 91 S.Ct. at 2081–82. In *Harris,* the Court held that an admission against interest was sufficient to form the basis of a finding that an informant's statement was reliable. As in that case, the Court here finds Monty's statement reliable.

## PROCEDURAL DEFECTS

Defendant has raised further objections to the search warrant proceeding on the basis that the magistrate failed to record the entire proceeding or certify the transcript. The final objection is that the warrant does not have a return date on it.

Defendant claims that the one minute gap is prejudicial because defendant is unable to ascertain what was said during that time. Defendant does, however, speculate that what was said may have negated other evidence provided or may have, in some way, exculpated the defendant.

This gap, however, is unlike other more famous gaps because this one appears to have been meant to be the termination of the proceeding. A reading of the transcript clearly reveals this. At the point of the gap, the Assistant United States Attorney had concluded his questioning of Agent Walsh. For some reason, however, further evidence was adduced and the tape resumed to record it.

Rule 41(c)(2)(D) of the Federal Rules of Criminal Procedure provides:

(D) Recording and certification of testimony.—When a caller informs the Federal magistrate that the purpose of the call is to request a warrant, the Federal magistrate shall immediately place under oath each person whose testimony forms a basis of the application and each person applying for that warrant. If a voice recording device is available, the Federal magistrate shall record by means of such device all of the call after the caller informs the Federal magistrate that the purpose of the call is to request a warrant. Otherwise a stenographic or longhand verbatim record shall be made. If a voice recording device is used or a stenographic record made, the Federal magistrate shall have the record transcribed, shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court. If a longhand verbatim record is made, the Federal magistrate shall file a signed copy with the court.

The legislative history of the rule indicates that Congress intended that this provision would enable the reviewing court to have an adequate record to determine whether probable cause existed to issue the warrant. It is further apparent from the language of this provision that it is the duty of the magistrate to make the recording and certify a copy of the transcript.

While it is certainly the better procedure to keep an entire record of the proceedings up until the warrant is actually issued to assure that all evidence is recorded, the Court does not find that there was any prejudice in the magistrate's failure to record the entire proceeding. The material following the gap is properly viewed as a supplementary affidavit of Agent Walsh. Therefore, it was properly considered in granting the warrant. Viewed as such, this procedure is not inconsistent with the intent of Congress or with the requirements of the Fourth Amendment. Nothing outside the confines of the affidavit is presented which is necessary to establish probable cause. The transcript is sufficient in itself to establish probable cause.

Defendant suggests that the transcript should be excluded because it is not complete. Such a decision, however, would not be in accord with the purposes of the Rule. If the transcript was excluded, then the government would have to rely on the

memory of the magistrate and Agent Walsh to establish probable cause. Certainly, such a procedure is more unreliable than a tape which provides a record of what was said to establish probable cause.

Defendant's second assertion is that because the transcript appended to the brief of the government is not verified or certified by the magistrate, it should not be considered by the Court. In addition, defendant contends that the failure of the government to append a certified copy precludes it from submitting a verified copy.

■ While it is true that the copy of the transcript attached to the government brief is not certified, the defendant places the responsibility and blame, if any, on the wrong person. Rule 41 clearly states that the magistrate "shall certify the accuracy of the transcription, and shall file a copy of the original record and the transcription with the court." Rule 41(c)(2)(D), Federal Rules of Criminal Procedure. It is not the duty or responsibility of the United States Attorney to certify the transcription. On January 28, 1980, the magistrate submitted a certified transcript of the proceeding, as well as the original tape. Both of these documents are part of the Court file in this matter and, therefore, the magistrate has fulfilled her duty under the Rule and without prejudice to the defendant.

■ The final allegation raised by the defendant regarding the search warrant is that it does not have a return date on it. The copy of the warrant attached to defendant's brief indeed lacks a date of execution. The original, however, filed in this matter contains a date and time of execution. It indicates it was executed on October 29, 1979 at 6:30 P.M. In addition, the docket sheet for the search warrant indicates that the return of the warrant was docketed on October 30, 1979 by the clerk's office. The return of the warrant also indicates the time it was executed.

Rule 41(c)(2)(F) requires that "[t]he person who executed the warrant shall enter the exact time of execution on the face of the duplicate original warrant." The duplicate original warrant is a copy used by a person who is seeking a warrant by phone.

It allows a person to obtain a warrant without being present before the magistrate.

In this case, however, although an oral warrant was applied for, the agent was in the presence of the magistrate and there was no duplicate original warrant executed. Under Rule 41(e), there is no requirement that the copy of a warrant given to a person have the time and date of execution on it. In any event, the original warrant here does contain the time of return and, therefore, defendant's motion to suppress the warrant must be and hereby is denied.

## ARREST OF DEFENDANT

Because the Court has held that the search warrant was properly based on probable cause, defendant's contentions that the arrest and any statements he made should be suppressed are without merit.

## MOTIONS TO DISMISS COUNTS THREE AND FOUR OF THE INDICTMENT

Count three of the indictment against defendant charges him with the knowing, intentional, and unlawful possession of cocaine with the intent to and the distribution of one-half ounce of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count four charges the defendant with the knowing, intentional, and unlawful possession of one kilogram of cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Both violations are alleged to have occurred on or about October 29, 1979.

Defendant contends these counts are multiplicious because they charge the same crime in two indictments. Defendant argues that Congress intended only one unit of prosecution and not multiple units for one possession with intent to distribute under 21 U.S.C. § 841. In addition, defendant contends in essence that the government actively produced the possibility of two counts because Agent Stacy bought one-half ounce of cocaine first. Defendant contends the government, therefore, multiplied the criminality of the possession.

The government claims that the only valid objection to multiplicity is multiplicity of punishment. Therefore, the government contends that the Court should postpone consideration of this motion until after trial. If then it is shown that the indictment arises from a single act, then the Court could sentence the defendant to concurrent sentences rather than consecutive ones. In addition, the government seems to suggest that it might show at trial that the two counts were not a single act.

In support of its position, the government cites *United States v. Universal C.I.T. Credit Corporation,* 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952). There the Court stated:

> Whether an aggregate of facts constitute a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an [indictment] and may have to await the trial on the facts.

In addition, the government cites *United States v. Amidzich,* 396 F.Supp. 1140, 1149 (E.D.Wis.1975) where Chief Judge Reynolds held that it was proper to postpone consideration of a motion to dismiss a count of an indictment until after trial or following a verdict where the government does not concede that only a single act of possession will be shown at trial.

Although it appears from the evidence that counts three and four are a single transaction, the Court will postpone its consideration of defendant's motion until after the government has put in its case. This will afford the government the opportunity to show there are two separate transactions. *See United States v. Ketchum,* 320 F.2d 3 (2d Cir. 1963); Moore's Federal Practice, ¶ 8.07[1]. At the close of the government's case, the defendant may renew his motion.

## MOTION TO COMPEL DISCOVERY

Defendant has requested that the Court order the government to disclose what amounts to a laundry list of everything the government has in its file.

In response, the government has again asserted that it will abide by its open file policy and make available to defendant all the information it has. In addition, by affidavit of the Assistant United States Attorney, the government has agreed to supply the tests and records that are not presently in the file to the defendant when they are again available.

■ Because of the government's open file policy, the Court will, as it has in the past, deny defendant's motion to compel discovery. *United States v. Beck,* 78–CR–19 (E.D.Wis. June 12, 1978). The open file policy provides the defendant with all that he is entitled to. The Court notes, however, that defendant has requested both the original and verified transcript of the search warrant proceeding in this case. There is no doubt that the defendant is entitled to this, however, he seeks it from the wrong party. The transcript and original are on file with the Court and are available for inspection by the defendant.

## MOTION FOR SEVERANCE

Defendant's final motion is a motion for severance on count three of the indictment wherein he and his co-defendant Monty have been charged with possession and distribution of one-half ounce of cocaine. Defendant contends that it will be necessary for the government to produce the testimony of co-defendant Monty to prove count three of the indictment against LaFond. Furthermore, the defendant alleges that such testimony will be in the form of a confession. Defendant concludes that he will be prejudiced because it will be impossible for the jury to return a verdict of guilty as to defendant Monty and not guilty as to defendant LaFond.

The government contends that defendant has not met his burden of showing that he will be unable to obtain a fair trial without severance. Defendant's remedy, according to the government, lies in Court instructions to the jury and not severance.

■ A motion for severance is directed to the sound discretion of the trial

## 1388

judge. *United States v. Echeles,* 352 F.2d 892 (7th Cir. 1965). In determining whether to grant a severance the Court must consider the defendant's interest in a fair trial against the public interest of having persons indicted together tried together as well as the interests in the efficient and speedy resolution of criminal matters. *United States v. Papia,* 560 F.2d 827 (7th Cir. 1977); *United States v. Echeles,* 352 F.2d 892.

■ The burden of demonstrating the necessity of severance is on the defendant. Defendant must show that he will be unable to obtain a fair trial without a severance. *United States v. Crouch,* 528 F.2d 625 (7th Cir.), *cert. denied,* 429 U.S. 900, 97 S.Ct. 266, 50 L.Ed.2d 184 (1976). That a separate trial might offer a better chance of acquittal is insufficient to compel severance. *United States v. All State Mortgage Corp.,* 507 F.2d 492, 495 (7th Cir. 1974).

As the Seventh Circuit stated in *United States v. Papia,* 560 F.2d at 837:

> Ultimately the question is whether, under the circumstances of the particular case, a properly instructed jury can follow the court's limiting instructions and assess each defendant's guilt or innocence solely on the basis of the evidence admissible against him.

■ Based on the foregoing statement of law and the failure of the defendant to sustain his burden of proof that he will be denied a fair trial if his co-defendant's testimony is used, the Court finds his motion for severance must be and is hereby denied. The Court would also note that the case cited by the defendant, *Schaffer v. United States,* 221 F.2d 17 (5th Cir. 1955), is inappropriate because there the defendants were not charged with a conspiracy and the defendants here are. Accordingly, a different standard applies in light of the co-conspirator exception and the hearsay rule.

■ In addition, it is within the Court's power to exclude, limit or redact statements of the co-defendant which might implicate the defendant's right to confrontation. *See United States v. Holleman,* 575 F.2d 139, 142–43 (7th Cir. 1978) (approving of redaction). Furthermore, the Court is confident that its limiting instruction to the jury will sufficiently protect the defendant's rights.

In summary, defendant's motions to suppress, sever, and compel discovery are denied. Defendant's motion to dismiss counts three and four of the indictment are also denied with leave to renew at the close of the government's case at trial.

SO ORDERED this 30th day of January, 1980, at Milwaukee, Wisconsin.