441 So.2d 1003 (1983)
Timothy D. MOORE
v.
STATE.
3 Div. 713.
Court of Criminal Appeals of Alabama.
July 5, 1983.
Rehearing Denied August 16, 1983.
Certiorari Denied December 16, 1983.
Larry Waites and J. Wilson Dinsmore of Dinsmore, Waites & Stovall, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and J. Anthony McLain and James F. Hampton, Sp. Asst. Attys. Gen., for appellee.
Alabama Supreme Court 82-1164.
BOWEN, Presiding Judge.
The defendant was indicted for the possession of cocaine, diazepam, and marijuana. He waived his right to trial by jury and was found guilty by the court upon a stipulation of facts. Sentence was fifteen years' imprisonment and a $15,000 fine. The only issue raised on appeal is the sufficiency of the affidavit to support a finding of probable cause for the issuance of the search warrant for the defendant's residence.
In pertinent part, the affidavit of Montgomery Police Officer Dennis Bodine states:
"And the facts tending to establish the foregoing for issuance of a daytime search warrant are as follows: On two previous occasions, 7/9/82 and 7/15/82, a subject sold cocaine to an undercover Montgomery police officer. On 7/20/82, the undercover officer ordered an additional ounce of cocaine from same subject. At approximately 10:02 A.M. this date, 7/20/82, the subject met with the undercover officer and sold one-half ounce of cocaine. At the time of this sale *1004 he was unable to provide the full ounce ordered, and he requested that the undercover officer advance him the money needed to make the additional one-half ounce purchase which was done. At approximately 10:06 A.M., the subject left the company of the undercover officer and began his journey to the residence in Sellers, Alabama. Utilizing helicopter surveillance as well as ground surveillance, the subject was observed going straight to the previously described residence of Timothy D. Moore without stopping. After the subject arrived at this residence constant visual surveillance was maintained. After approximately thirty minutes said subject departed from the residence of Timothy D. Moore and drove non-stop straight back to the location where the undercover officer was waiting. Upon meeting with the undercover officer, said subject gave him an additional quantity of cocaine. At no time was visual contact lost on the subject. The aforegoing is based upon personal knowledge of the affiant and on facts obtained by the Vice and Narcotics Unit, Investigative Division, Montgomery Police Department, Montgomery, Alabama, and is made for the purpose of securing a warrant for the premises of Timothy D. Moore or Jayne Moore, located in Montgomery County, Montgomery County, Alabama, in the daytime only."
It was stipulated that this was all the information put before the district court to justify the issuance of the search warrant.
"(A)n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." Whiteley v. Warden, 401 U.S. 560, 565, n. 8, 91 S.Ct. 1031, 1035, n. 8, 28 L.Ed.2d 306 (1971). Here, there is no contention that the affidavit was supplemented by oral statements to the magistrate. Thus, the only issue is whether the affidavit is facially sufficient. In other words, do the facts contained in the affidavit constitute probable cause?
In support of his argument that there was no probable cause for the issuance of the search warrant, the defendant relies on State v. McManus, 243 N.W.2d 575 (Iowa, 1976). In that case the drug dealer told the undercover police officer that he was unable to make his contact for the marijuana and would try again in approximately forty-five minutes and would return in two hours. The dealer was kept under surveillance. After leaving the undercover agent, the dealer went to the defendant's farmhouse. He shortly returned to his rendezvous with the undercover agent and sold him twenty pounds of marijuana. The court found that the dealer's stop at the farmhouse, without more, was insufficient to support a finding of probable cause that the defendant had committed any offense.
"The sworn affidavit and abstract of oral testimony showed only that Goodrich (dealer) stopped at defendant's farmhouse between the time he met with Deputy Warner (undercover agent) and the time he delivered the marijuana to the deputy. We do not hesitate to say the visit by Goodrich to the farmhouse, along with his earlier mention of a `contact', cast upon defendant a certain aura of suspicion. Probable cause, however, requires more than mere suspicion. State v. Birkestrand, supra, 239 N.W.2d [353] at 357; State v. Shea, 218 N.W.2d 610, 614 (Iowa 1974).
"Our problem with the facts of this case is that there was nothing beyond the mere coincidence of timing of the visit of Goodrich to the McManus farmhouse to connect defendant with any wrongdoing. There was no indication from the affidavit for the search warrant or the abstract of the oral testimony that Goodrich's auto did not already contain the marijuana before his visit to the farmhouse, that Goodrich took anything from the farmhouse to his car while there or that he even opened the trunk of the vehicle at any time he was at the farm. There was no indication of any independent information linking defendant to wrongdoing, of which the events of November 1 might have been corroborative. There was no *1005 indication that Goodrich or anyone else provided information tending to incriminate defendant. Defendant himself was apparently not observed on November 1; the information for the search warrant indicated the affiant did not know who occupied the house near Lone Tree. There was no indication of any other suspicious visits to defendant's home."
....
"In the instant case, Goodrich's stop at the farmhouse, even with its hint of suspicion due to the timing of the visit, was insufficient, without more, to support a finding of probable cause that defendant had committed or was committing an offense. Such a visit was sufficiently consistent with innocent behavior and activity that more was needed for the issuance of the warrant. We have said that innocent-appearing activity cannot be used to bolster an otherwise inadequate warrant application." McManus, 243 N.W.2d at 578-79.
McManus was a five to four decision of the Iowa Supreme Court. The four dissenting justices found that "(t)he timing of Goodrich's visit to the farmhouse, which the court calls `mere coincidence', is highly probative" of illegal activity in the context in which it occurred. They found that "a reasonably cautious person could reasonably conclude from these facts and circumstances that marijuana would be found in the farmhouse, and that probable cause therefore existed to issue the search warrant." McManus,
Some courts have been reluctant to find a sufficient nexus or connection between the criminal activity, the things to be seized and the place to be searched to support a finding of probable cause where the place to be searched is not the defendant's own residence or under his control. W. LaFave, 1 Search and Seizure Section 3.7, n. 110 (1978). However, other courts have not shown such hesitation. United States v. Valenzuela, 596 F.2d 824 (9th Cir.1979), cert. denied, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (narcotics sellers seen leaving his house before going to where sale occurred); State v. Witwer, 642 P.2d 828 (Alaska App.1982) (before each of two drug purchases, seller went first to same premises); State v. Mena, 399 So.2d 149 (La.1981) (before sale, dealer told agent he had to get drugs from his connection, went to premises, returned with defendant and, after arrest, told agent he had obtained drugs from defendant); State v. Yaritz, 287 N.W.2d 13 (Minn.1979) (two sales elsewhere, each time defendant observed going straight from his house to the place of the sale).
Judged by the standards set out in United States v. Chester, 537 F.2d 173, 175 (5th Cir.1976), cert. denied, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977), the district court's finding of probable cause should be sustained.
"A probable cause issue can rarely, if ever, be resolved with the exact logic of a Euclidean theorem. Each case must turn on its facts. Some guideposts, however, are available to a reviewing court. Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584 [590] 21 L.Ed.2d 637 (1969). The issuing magistrate is not to be confined by niggardly limitations or by restrictions on the use of his common sense. Id. See United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). And the magistrate's determination of probable cause should be paid great deference on appeal. Spinelli v. United States, supra, [393 U.S. 410] at 419, 89 S.Ct. 584 [at 590]; Jones v. United States, 362 U.S. 257, 270-71, 80 S.Ct. 725 [735-36] 4 L.Ed.2d 697 (1960)."
Although the court in McManus found the dealer's visit to the defendant's residence only a "mere coincidence of timing", under the facts of this case, we find the dealer's visit to the defendant's home extremely significant in finding the existence of probable cause. State v. Hadd, 127 Ariz. 270, 619 P.2d 1047, 1053 (1980) (Fact that suspected marijuana dealer was observed visiting defendant's home immediately after he arranged to sell marijuana to undercover *1006 agents, and fact that marijuana was found in suspected marijuana dealer's vehicle immediately after he left defendant's home, supported conclusion of probable cause that marijuana was located in defendant's home, for purpose of issuing warrant to search the home); State v. Watson, 113 Ariz. 218, 550 P.2d 89 (1976) ("We find that the fact that the seller left appellant's home immediately prior to the controlled sale as strong evidence to establish probable cause in this context"). See also State v. Urrutia, 24 Ariz.App. 439, 539 P.2d 913 (1975); State v. Muffeo, 642 P.2d 404 (Wash.App.1982); United States v. Kunkler, 679 F.2d 187 (9th Cir.1982). Part of this significance lies in the fact that in this case, unlike McManus, the dealer went to the defendant's house immediately after he had consummated one drug sale and before he made a second sale to the same party. Since the dealer had already "incriminated" himself, there is no reason to suspect that he went to the defendant's for any reason other than to secure more cocaine.
The two-pronged probable test standard of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), does not apply in this case because the facts establishing probable cause come from the observations of law enforcement officers and not from either a confidential informant or a person connected with the crime involved or known to associate with criminals. United States v. LaFond, 482 F.Supp. 1379, 1384 (E.D.Wis. 1980). Since the officers were acting in their "normal capacity" as law enforcement officials, their veracity may be assumed and need not be independently demonstrated. LaFond; Kunkler, 679 F.2d at 190.
As previously discussed, the facts and circumstances related by Officer Bodine indicate there was probable cause to believe that cocaine was located in the defendant's residence. No doubt, the cocaine could have been located in the dealer's automobile or even on his person. However, this possibility does not negate the probability, as found by the district court, that cocaine would be found at the defendant's residence. Any "alternative hypothesis ... misconceives the nature of the probable cause inquiry." Chester, 537 F.2d at 176.
This Court finds that, based upon a common sense reading of the affidavit, the district court could have reasonably concluded that the cocaine was probably located in the defendant's house. This finding of probable cause is supported by the affidavit. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

ON REHEARING
BOWEN, Presiding Judge.
Our finding of probable cause to search is strengthened by the application of the totality of the circumstances test of determining probable cause reaffirmed in Illinois v. Gates, (1983) ___ U.S.___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and the abandonment of the two-pronged test established in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud(ing)' that probable cause existed."
Our review of the affidavit makes it apparent that the judge issuing the warrant had a substantial basis for concluding that probable cause existed to search the defendant's residence.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.