[No. 55190-1.  En Banc.  January 19, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. GENOVEVA MEJIA, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. SALOMON V. PRECIADO, *Appellant.*

*Jerry D. Talbott* (of *McArdle, Dohn, Talbott, Simpson & Gibson, P.S.*), for appellant Mejia.

*Thomas Bothwell* and *Prediletto, Halpin, Cannon, Scharnikow & Bothwell, P.S.,* for appellant Preciado.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Michael G. McCarthy, Deputy,* for respondent.

CALLOW, C.J.—Defendants Preciado and Mejia challenge the sufficiency of a search warrant which was based on information given by an unidentified "middleman" to a police informant. Defendant Preciado also challenges the imposition of a 30–month sentence as outside the presumptive range and clearly excessive.

We affirm the trial court. We hold that the affidavit's description of the middleman's actions established probable cause, and that the large amount of the cocaine seized warranted the imposition of an exceptional sentence.

On January 28, 1987, a Yakima County District Court Judge issued a search warrant based on the following:

> On January 8, 1987, your affiant used a confidential reliable informant to establish contact with a middleman to arrange a purchase of cocaine. These two parties will henceforth be described as "informant" and "middleman". Your affiant believes that the confidential informant is reliable for the following reasons: Informant has been known to your affiant for six months. He has completed four controlled buys under your affiant's direction and supervision, in each instance purchasing controlled substances. Further, informant has been given information regarding drug trafficking which has been verified through other investigations conducted by the City–County Narcotics Unit. Informant has never provided your affiant with information which has been found to be false.
>
> On January 8, 1987, informant and middleman met at a pre–arranged location to initiate a drug transaction, i.e., informant to purchase cocaine by and through middleman. The informant's person and vehicle had been searched prior to this meeting and no controlled substances were found. Additionally, the informant was provided with $200.00 (serial numbers recorded) with which to purchase an eight–ball (⅛ ounce) of cocaine.

Your affiant, along with other members of the City/
County Narcotics Unit, surveilled the middleman as he
traveled by automobile from the meeting at the prear-
ranged location. Additionally, the informant was kept
under surveillance and no one contacted the informant
during the middleman's absence.

Middleman, after leaving the pre–arranged location,
drove directly to the residence above described and
entered the residence without stopping. After leaving the
residence, he returned directly to the pre–arranged loca-
tion where middleman recontacted informant. After mid-
dleman left the area, your affiant recontacted informant
who related the following: Middleman had told infor-
mant that he could obtain large quantities of cocaine,
from a particular source, at the price of $200.00/one–
eighth ounce, which is in your affiant's knowledge well
below the normal street price. Additionally, middleman
took the $200.00 from informant and told informant that
he was going to his source and to wait at the pre–
arranged location, because middleman would be back
shortly with the cocaine. That middleman left with the
money and upon return, middleman delivered an eighth
of an ounce of cocaine to informant. This substance was
turned over to your affiant and field tested positive for
cocaine.

Your affiant thereafter arranged another controlled
buy of cocaine, by informant from middleman. The sce-
nario above described was again followed, said purchase
occurring on January 27, 1987. Again, informant and
vehicle were searched prior to meeting with middleman
and informant was provided with $200.00 to purchase
cocaine. The informant and middleman met at the
pre–arranged location, middleman left and proceeded
directly, without stopping, to the above–described resi-
dence. Both parties were surveilled by members of the
Narcotics Unit. During middleman's absence, informant
had no contact with anyone. Middleman left the resi-
dence, entered his vehicle, drove directly back to the pre–
arranged location, met again with informant and they
then parted company.

Your affiant immediately thereafter contacted infor-
mant and informant turned over to affiant an eighth of
an ounce of white powder which tested positive for

cocaine. Informant also advised your affiant of the following: Middleman took the $200.00 from the informant and told informant to wait, that he would be back directly with the cocaine from his supplier. Further, middleman said that he brought so much business to the supplier (in the manner he was bringing the informant's business to the supplier) that the supplier had given him (middleman) a quantity of cocaine as a bonus. Middleman thereafter snorted the cocaine in front of the informant. (Affiant, surveilling the meeting had observed middleman assume a position consistent with snorting cocaine.) Further, middleman told informant that the supplier had so much cocaine that the supplier utilized a fruit–picking bucket in breaking large pieces into powder.

The police discovered a pound and a half of cocaine, which was the largest quantity seized in Yakima County to that date. The police subsequently arrested the couple occupying the house—defendants Preciado (husband) and Mejia (wife).

The defendants' motions to suppress were denied and both were convicted of possession of cocaine with intent to deliver. Defendant Mejia was sentenced to 13 months, within the presumptive range. Because of the extraordinary amount of cocaine seized, the defendant Preciado was sentenced to an exceptional term of 30 months. Both defendants appealed.

I

We first consider the validity of the search warrant in relation to the involvement of a "middleman". An affidavit of probable cause which supports the issuance of the search warrant must set forth facts which establish an informant's veracity and basis of knowledge. *State v. Gunwall,* 106 Wn.2d 54, 70, 720 P.2d 808 (1986); *State v. Jackson,* 102 Wn.2d 432, 433, 688 P.2d 136 (1984); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The veracity prong requires the magistrate to determine whether the informant has *truthfully* related the facts. *Gunwall,* at 70–71; *Jackson,* at 437. The basis–of–

knowledge prong requires the magistrate to determine whether the informant has *personal knowledge* of the facts. *Gunwall,* at 70–71; *Jackson,* at 437. Only after the magistrate is satisfied as to both the truthfulness of the informant and that the informant knows what he is talking about can the magistrate determine whether the facts support the conclusion that there is probable cause to believe that criminal conduct may have occurred. *Gunwall,* at 73.

The affidavit in this case satisfies both prongs of the *Aguilar–Spinelli* test as to the informant. The recitation of the informant's previous record establishes the informant's veracity. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). The affidavit itself indicates that the informant spoke from personal knowledge as to the things the middleman said and did. However, the informant did not purport to have personal knowledge whether the facts communicated by the middleman were true.

The affidavit indicates that the middleman "communicated" facts in two different ways. First, the middleman made statements to the informant which the informant related to the police. For example, the middleman told the informant that "the supplier had so much cocaine that the supplier utilized a fruit–picking bucket in breaking large pieces of cocaine into powder." The magistrate would have had to have been satisfied as to the middleman's veracity and basis of knowledge had the middleman told this directly to the police and assumed the role of a direct informant himself. *See Gunwall,* at 71. Since these words were the words of the unknown middleman and only relayed to the police through the informant, special attention must be paid to the middleman's involvement to ensure his reliability. *See* 1 W. LaFave, *Search and Seizure* § 3.3(d) (2d ed. 1987). Therefore, the *Aguilar–Spinelli* test applies to the middleman's statements. Compare *Gunwall,* at 71.

However, the middleman also "communicated" some facts to the police by his conduct. The middleman did

not hand over the cocaine when he took the informant's money. Rather, the police watched him leave the meeting site, travel directly to the house in question, travel back to the informant, and only then give the informant cocaine. Thus, the middleman's actions indicated to the police that the house ultimately searched contained cocaine. Reasonableness and common sense are key ingredients in discovering the absence or presence of probable cause. *State v. Gunwall, supra.*

Previous Washington cases have left an unclear trail on similar factual patterns. In each case, an informant or undercover officer met with a middleman and negotiated the purchase of drugs. The police observed the middleman travel from the purchase site, observed him enter and exit a residence, and then followed him back to the informant or undercover officer, at which time the middleman consummated the drug transaction. All the cases use *Aguilar–Spinelli* to analyze the middleman's statements. However, the cases differ as to whether the test also applies to the middleman's conduct.

The first case to consider the issue, *State v. Smith,* 28 Wn. App. 387, 624 P.2d 191 (1981), applied the *Aguilar–Spinelli* test to the conduct, as well as the statements, of the middleman. The court reasoned that since the middleman "was the ultimate source of the tip", the middleman was a "third party informant." 28 Wn. App. at 390. *See also State v. Morehouse,* 41 Wn. App. 334, 704 P.2d 168 (relying on *Smith* to reach an identical result), *review denied,* 104 Wn.2d 1020 (1985).

However, in *State v. Maffeo,* 31 Wn. App. 198, 201, 642 P.2d 404, *review denied,* 97 Wn.2d 1012 (1982), the court applied the *Aguilar–Spinelli* test to the middlemen's statements, but not to direct police observation of the middlemen's conduct. Likewise, in *State v. Gonzalez,* 51 Wn. App. 242, 243–46, 752 P.2d 939 (1988), the court

refused to apply the *Aguilar–Spinelli* test because the affidavit did not contain any statements made by the middleman, but disclosed only what the police themselves had observed of the middleman's conduct.

> We decline to apply *Aguilar–Spinelli* to persons with whom the police have no direct contact and supply no information. *Aguilar–Spinelli* only involved informants who supplied information that formed the basis for issuing a search warrant.

*Gonzalez*, 51 Wn. App. at 248. Like *Maffeo, Gonzalez* conflicts with *Smith*.

We find that the opinion in *Smith* should not have applied the *Aguilar–Spinelli* test. In *Smith,* as in all these cases, nothing suggests that the middleman knew he was being observed as he traveled to and from the house ultimately searched. The middleman's conduct had no consciously communicative element. Therefore, inquiring whether the middleman "told" the truth or had personal knowledge of the facts he "related" to the police is irrelevant.

The *Aguilar–Spinelli* rule deals with problems similar to those addressed by the hearsay rule. The hearsay rule applies only to "statements." ER 801(c). "Statements" are defined in part as the "nonverbal conduct of a person, *if it is intended by him as an assertion."* (Italics ours.) ER 801(a).

> *Nonverbal conduct* that is not intentionally being used as a substitute for words to express a fact or opinion is not hearsay. . . .
> The admissibility of . . . nonverbal conduct as circumstantial evidence of a fact in issue is governed by principles of relevance, not by hearsay principles.

*In re Penelope B.,* 104 Wn.2d 643, 652–53, 709 P.2d 1185 (1985). The hearsay rule does not apply to nonassertive conduct because the fact of the actor's conduct itself adequately guarantees the actor's sincerity, memory and perception of the fact "communicated". E. Cleary, *McCormick*

*on Evidence* § 250, at 739 (3d ed. 1984). The *Aguilar–Spinelli* rule should not apply to nonassertive conduct for the same reason.

It appears that no other jurisdiction has used *Aguilar–Spinelli* to analyze the nonassertive conduct of a middleman. On nearly identical facts, the Supreme Court of Minnesota reasoned that:

> we need not discuss whether the so–called *Aguilar* test was satisfied, since the affidavit, when viewed in a realistic, common–sense fashion, contains information indicating that officers of the narcotics division had made observations in themselves sufficient to demonstrate the existence of probable cause to believe that narcotics would be found in a search of the residence.

(Footnote omitted.) *State v. Hawkins,* 278 N.W.2d 750, 751 (Minn. 1979). *Accord, United States v. Kunkler,* 679 F.2d 187 (9th Cir. 1982); *Moore v. State,* 441 So. 2d 1003 (Ala. Crim. App. 1983), *cert. denied,* 466 U.S. 928 (1984); *State v. Witwer,* 642 P.2d 828, 832 (Alaska Ct. App. 1982); *State v. Hadd,* 127 Ariz. 270, 619 P.2d 1047, 1053 (1980); *State v. McManus,* 243 N.W.2d 575 (Iowa 1976) (probable cause held not established); *State v. Mena,* 399 So. 2d 149, 152 (La. 1981); *State v. Yaritz,* 287 N.W.2d 13, 14–15 (Minn. 1979). The *Smith* decision is unique in applying *Aguilar–Spinelli* to the middleman's nonassertive conduct.

We hold that *Aguilar–Spinelli* does not apply to the middleman's nonassertive conduct; rather, the magistrate could properly consider the police's firsthand observation of the middleman's conduct for its probative value in determining probable cause. The decisions in *State v. Smith,* 28 Wn. App. 387, 624 P.2d 191 (1981), and *State v. Morehouse,* 41 Wn. App. 334, 704 P.2d 168, *review denied,* 104 Wn.2d 1020 (1985), are overruled.

Having determined that the magistrate could properly consider the middleman's nonassertive conduct for its probative value, we further hold that the magistrate could reasonably infer that the middleman acquired cocaine from the defendant's house from the middleman's conduct alone.

Accordingly, we need not determine whether *Aguilar–Spinelli* has been met as to the middleman's statements to the informant.

The defendants assert that the middleman's conduct is inherently ambiguous, and so not sufficient to establish probable cause, because "the drugs could have been in [the middleman's] car all along and he could have simply been 'setting up' the defendant . . . out of some sort of personal grudge." *See also Smith,* 28 Wn. App. at 387. However, an affidavit need not establish proof of criminal activity, but merely probable cause to believe it has occurred. *State v. Gunwall,* 106 Wn.2d 54, 73, 720 P.2d 808 (1986), citing *State v. Patterson,* 83 Wn.2d 49, 52, 515 P.2d 496 (1973); *State v. Gonzalez,* 51 Wn. App. 242, 249, 752 P.2d 939 (1988). In the absence of any evidence tending to show that the middleman intended to communicate a "setup" to the police, it is most likely that the middleman obtained cocaine from the house. It follows that the magistrate could reasonably infer that there would be more cocaine at the house. *Maffeo,* at 202; 1 W. LaFave, *Search and Seizure* § 3.7(d) n.118 (1987). Each of the out–of–state cases cited, *supra,* support this result, save *State v. McManus, supra.*

## II

We next consider the propriety of the extraordinary sentence. Defendant Preciado was convicted of possessing cocaine with intent to deliver, RCW 69.50.401(a)(1). The presumptive sentence for a first offender convicted of this offense is 12 to 14 months. However, the trial judge sentenced Preciado to 30 months, because the 1½ pounds was "the largest seizure of cocaine in Yakima County history," valued at "forty to fifty thousand dollars."

> To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4).

The defendant admits the record supports the trial court's finding that this was the largest seizure of cocaine in Yakima County history. The defendant asserts that this fact does not justify the imposition of a sentence outside the standard range.

An appellate court will review as a matter of law a trial judge's determination that extraordinary factors justify the imposition of a sentence outside of the standard range. *State v. Fisher,* 108 Wn.2d 419, 423, 739 P.2d 683 (1987). Only "substantial and compelling" factors other than those necessarily considered by the Legislature in computing the presumptive range of the offense will justify an extraordinary sentence. *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

■ The defendant argues that the Legislature should have known that individuals possessing large amounts of cocaine would be convicted under this statute and set the high end of the standard range with such large amounts in mind. However, the Legislature specifically provided that a drug trafficking offense which is a "major violation . . . more onerous than the typical offense of its statutory definition" is an aggravating factor warranting the imposition of an exceptional sentence. RCW 9.94A.390(2)(d). *State v. Gunther,* 45 Wn. App. 755, 760–61, 727 P.2d 258 (1986), *review denied,* 108 Wn.2d 1013 (1987) has held that possession of a half pound of cocaine properly constitutes an aggravating factor warranting an exceptional sentence of 24 months on a first–time offender. We hold that the extraordinary amount of cocaine seized justified the imposition of an exceptional sentence.

■ The defendant further asserts that the 30–month sentence actually imposed is clearly excessive. We disagree. Once an appellate court determines that extraordinary factors justify an exceptional sentence, it will overturn the actual sentence imposed only upon a showing of abuse of discretion. *State v. Oxborrow,* 106 Wn.2d 525, 530–31, 723 P.2d 1123 (1986). The fact that the sentence imposed

exceeds double the presumptive range does not indicate an abuse of discretion. *Oxborrow,* at 531. The maximum sentence for this offense is 10 years; the trial judge imposed only a 2½–year sentence. Compare *State v. Armstrong,* 106 Wn.2d 547, 552 n.1, 723 P.2d 1111 (1986), which held the imposition of one–half of the maximum sentence was not indicative of an abuse of discretion. We find no abuse of discretion in the imposition of a 30–month sentence.

The judgment is affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.

PEARSON, J., concurs in the result.