OPINION *Page 2 
{¶ 1} Plaintiff-appellant, the State of Ohio (the "state"), appeals the judgments of the Franklin County Court of Common Pleas ("trial court") that granted motions to suppress that defendants-appellees, Daville D. Allen and Ashley Jimerson ("appellees"), filed.
 {¶ 2} The Franklin County Municipal Court granted Whitehall City Police a warrant to search 3359 Elbern Avenue. The police provided an affidavit to support the warrant. Whitehall Sergeant Dennis Allen wrote the affidavit and stated the following. A confidential informant told Sergeant Allen that he saw a drug dealer known as "Tommy" purchase crack cocaine from a man known as "Robbie" at Elbern. An investigation demonstrated that Robert Taylor lives at Elbern. The informant accompanied Sergeant Allen to Elbern and reiterated that crack was sold there. Afterward, Sergeant Allen arranged a controlled buy at Elbern. The informant was involved in the controlled buy, and the informant was to have Tommy obtain crack at Elbern. Before the controlled buy, Sergeant Allen searched the informant and his car and found no contraband. The informant wore a hidden microphone, and Sergeant Allen maintained audio and visual surveillance of the controlled buy.
 {¶ 3} Next, Sergeant Allen described in the affidavit the following events that he observed during the controlled buy. The informant met Tommy, and the informant drove Tommy to Elbern. While in the car, Tommy and the informant discussed the sale of crack. Tommy went inside Elbern for three minutes. Afterward, Tommy re-entered the informant's car, and Tommy talked about the sale of crack. Tommy said that he *Page 3 
always sees crack in the kitchen at Elbern, and he has seen Robbie with crack in the kitchen. The informant drove near Tommy's house, and Tommy exited the car.
 {¶ 4} The affidavit also stated that the following occurred after the controlled buy. The informant met with Sergeant Allen, and the informant gave the sergeant crack. The informant said that Tommy returned from Elbern with crack. The sergeant again searched the informant and his car and found no contraband.
 {¶ 5} Upon executing the search warrant, the police found appellees in possession of illegal drugs at Elbern. Appellees were indicted on drug charges, and appellees moved to suppress evidence found during the search on grounds that the municipal court lacked probable cause to issue the search warrant. The trial court held a hearing on the motion. Whitehall Detective John Grebb testified at the hearing that he requested the search warrant from the municipal court. The detective testified that he presented the affidavit with the warrant, and the municipal court "swore [him] to the facts that were in the affidavit." (Tr. 9.) The detective also testified that, before the municipal court issued the warrant, the court read the warrant, but asked no questions.
 {¶ 6} Sergeant Allen also testified at the hearing. On direct examination, Allen testified that the informant he mentioned in the affidavit had helped him on other cases, and Allen concluded that the informant was reliable. The sergeant also testified that the police department had "dealt with" Tommy in the past, and the police have records on Tommy. (Tr. 16.) In addition, Sergeant Allen testified on direct examination about the controlled buy. The testimony mirrored the affidavit, except that Sergeant Allen testified that Tommy and the informant went into Elbern during the controlled buy. *Page 4 
 {¶ 7} On cross-examination, Sergeant Allen conceded that, contrary to his testimony, the affidavit stated that the informant did not go into Elbern during the controlled buy. Sergeant Allen clarified that the affidavit correctly detailed the controlled buy. Sergeant Allen also discussed why he mentioned Robbie in the affidavit. Sergeant Allen explained that the informant assumed that Robbie was at Elbern because Tommy claimed that he bought crack from Robbie. However, Sergeant Allen acknowledged at trial that Tommy bought crack from more than one dealer.
 {¶ 8} Moreover, Sergeant Allen testified on cross-examination that he did not search Tommy for crack before Tommy entered Elbern. The sergeant concluded at trial that Tommy did not have crack before he entered Elbern because if Tommy did, he would have sold it to the informant and would not have needed to go to Elbern. Allen also testified that the police "later" confronted Tommy, and Tommy agreed to cooperate with the police. (Tr. 23.)
 {¶ 9} On re-direct examination, appellant asked Sergeant Allen if he overheard Tommy tell the informant during the controlled buy that he had seen a lot of crack in the kitchen at Elbern and that he had seen Robbie with crack at Elbern. Allen testified that the informant told him about this conversation before the controlled buy.
 {¶ 10} During closing arguments, the state admitted that the search warrant did not contain "a model affidavit." (Tr. 32.) However, the state argued that the affidavit met "the bear minimum standards for filing the warrant." (Tr. 32-33.) Afterward, the trial court granted appellees' motions to suppress. The court first acknowledged that the affidavit did not vouch for the informant's reliability. The court also noted "confusion" about whether Robbie was selling drugs at Elbern and that, with the confusion, "[m]aybe *Page 5 
we don't know whose house we were at." (Tr. 34.) The court also recognized that Robbie's identity and reliability are unknown. Next, the court stated that the affidavit did not vouch for Tommy's reliability. In addition, the court acknowledged that Sergeant Allen did not search Tommy before or after the controlled buy and that the informant did not accompany Tommy at Elbern during the controlled buy. Thus, the trial court surmised that Tommy may have had crack before he entered Elbern or that "these drugs could have been in the confidential informant's car the whole time." (Tr. 36.)
 {¶ 11} Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT[S] MOTION[S] TO SUPPRESS.
 {¶ 12} In its single assignment of error, the state contends that probable cause supported the search warrant for Elbern. Alternatively, the state argues that the police executed the warrant in good faith pursuant to United States v. Leon (1984), 468 U.S. 897. On these grounds, the state asserts that the trial court erred when it granted appellees' motions to suppress evidence obtained from the warrant. We agree.
 {¶ 13} Under the Fourth Amendment to the United States Constitution, probable cause must support a search warrant. The Fourth Amendment applies to the states through the Fourteenth Amendment to the United States Constitution. Smith v. Maryland (1979), 442 U.S. 735, 736;Mapp v. Ohio (1961), 367 U.S. 643, 655.
 {¶ 14} A police officer establishes probable cause for a search warrant through an affidavit. See Crim. R. 41(C). Probable cause involves a fair probability that criminal activity exists, not a prima facie demonstration of criminal activity. State v. Ingold, Franklin App. No. 07AP-648, 2008-Ohio-2303, ¶ 19. Thus, a judge properly issues a search warrant if the totality of the circumstances establish a "fair probability that *Page 6 
contraband or evidence of a crime will be found in a particular place."Illinois v. Gates (1983), 462 U.S. 213, 238. The judge makes a probable cause determination through a "practical, common-sense decision." Id. In ruling on a motion to suppress, the trial court must exclude evidence obtained from a search warrant issued without probable cause if the officers did not execute the warrant in good faith. Leon; State v.George (1989), 45 Ohio St.3d 325, 330-331.
 {¶ 15} A reviewing court does not engage in a de novo determination over whether a judge issued a search warrant on probable cause.George at 330. Rather, a reviewing court — whether the trial court reviewing a suppression motion or the appellate court — accords great deference to the issuing judge's determination of probable cause, and doubtful or marginal cases should be resolved in favor of upholding the warrant. Id.
 {¶ 16} Here, the trial court noted that the search warrant's affidavit did not vouch for the informant's reliability. Appellant argues that the affidavit did not need this information. An informant's veracity, reliability, and basis of knowledge are relevant in determining whether a search warrant is based on probable cause, however. Gates at 233. Nonetheless, a deficiency in one of these principles does not negate probable cause if there is a strong showing on another or if there is some other indicia of reliability. Id. Thus, here, the trial court did not end its inquiry with the affidavit not vouching for the informant's reliability. Instead, the court also concluded that other aspects of the affidavit did not establish probable cause for the search warrant.
 {¶ 17} Specifically, the trial court did not find probable cause that the crack that Tommy gave the informant came from Elbern. The trial court noted that the police did not search Tommy before or after the controlled buy and that the informant did not *Page 7 
witness Tommy buy drugs at Elbern during the controlled buy. The state contends that this conclusion is wrong, and the state bases its argument, in part, on a Supreme Court of Washington decision, State v.Mejia (1989), 111 Wash.2d 892. In Mejia, police obtained a search warrant with an affidavit that provided the following details about two controlled buys that involved a confidential informant and an unwitting middleman. Id. at 894-896. The police searched the informant and his car before each controlled buy and found no contraband. Id. at 894-895. The controlled buys were under police surveillance. During the buys, the informant met the middleman, gave the middleman money, and waited while the middleman went in the defendants' house. Id. Thereafter, the middleman returned to the informant. Id. at 895. Ultimately, the informant gave the police cocaine, and the informant indicated that the middleman gave him the cocaine. Id. at 895-896.
 {¶ 18} Next, the affidavit stated that, after the second controlled buy, the middleman used cocaine in front of the informant, and the middleman told the informant that his supplier had a lot of cocaine. Id. at 896. Lastly, the affidavit mentioned the informant's history of helping the police, and the affidavit described the informant as reliable. Id. at 894.
 {¶ 19} Recognizing that the police did not search the middleman, the defense in Mejia contended that probable cause did not support the search warrant because the cocaine the informant gave the police after the controlled buys could have originated from the middleman. Id. at 901. The Supreme Court of Washington rejected this argument. Id. The court concluded that the magistrate that issued the search warrant could have reasonably inferred that the middleman acquired cocaine from the *Page 8 
defendants' house. Id. at 900. The court noted that the middleman did not give the informant cocaine after he took the informant's money. Id. at 898. Rather, the middleman gave the informant cocaine after leaving the defendants' house. Id. The court also found no evidence that the middleman "intended to communicate a `setup' to the police." Id. at 901.
 {¶ 20} In contrast, we recognize State v. Smith (2001),146 Ohio App.3d 154. In Smith, the police obtained a search warrant after a controlled buy that involved a confidential informant and an unwitting middleman. Id. at 156-157. The affidavit submitted in support of the warrant indicated that the police found no contraband on the informant before the controlled buy, and the informant wore a hidden microphone for the police to observe the controlled buy. Id. at 156. The informant met the middleman, and they both entered the defendant's house. Id. Afterward, the middleman and the defendant went to a separate room. Id. The middleman returned to the informant and gave the informant illegal drugs. Id. The informant gave the police the drugs, and the police searched the informant again and found no contraband. Id. at 157. Thereafter, the police questioned the middleman, and the middleman stated that he had previously bought drugs from the defendant. Id.
 {¶ 21} The defendant filed a motion to suppress evidence obtained from the search warrant. Id. at 156. At a hearing on the motion, a police sergeant testified that the police did not search the middleman before the controlled buy. Id. at 157. The sergeant also testified that the middleman was aware that he would be charged with drug trafficking when he talked to the police after the controlled buy, and the middleman talked to the police "in hopes of obtaining a `deal.'" Id. *Page 9 
 {¶ 22} The trial court held that probable cause did not support the search warrant, and the appellate court agreed. Id. at 157, 159-160. The appellate court noted that the middleman talked to police with knowledge that he would be charged with a crime. Id. at 160. The appellate court concluded that this information negated probable cause for the search warrant "coupled with the fact that" (1) no one witnessed the drug trafficking between the defendant and the middleman, and (2) the police did not search the middleman before the controlled buy. Id.
 {¶ 23} In addition, we recognize State v. Goins, Morgan App. No. 05-8,2006-Ohio-74. In Goins, the appellate court reviewed a search warrant that the police obtained after two controlled buys that occurred on the same day. Id. at ¶ 2-3. The police set up the controlled buys with a confidential informant, and the informant used an unwitting middleman to purchase crack from the defendant. Id. at ¶ 2. The affidavit supporting the search warrant indicated the following. The police searched the informant at an initial meeting before the controlled buys, but the affidavit did not mention that the police searched the middleman. Id. at ¶ 16, fn. 2. The controlled buys were not under police surveillance. Id. Instead, the informant told the police about the controlled buys. Id. During both controlled buys, the informant drove the middleman to the defendant's house, and the informant waited in the car while the middleman went in the house with the defendant. Id. Afterward, the middleman left the house and gave the informant crack. Id. Next, the informant gave the police the crack. Id. The affiant also stated that he and other police officers knew that drug trafficking occurred at the defendant's house. Id. *Page 10 
 {¶ 24} The court held that probable cause did not support the search warrant because the supporting affidavit was improperly based "entirely on hearsay." Id. at ¶ 16. The court relied on Crim. R. 41(C), which states that hearsay may be considered in determining probable cause if there is a substantial basis (1) for believing the credibility of the source of the hearsay, and (2) for believing that there is a factual basis for the information furnished. Goins at ¶ 14. The court indicated that the hearsay about the controlled buy did not establish probable cause because the affidavit did not vouch for the reliability of the informant or the middleman, and because the police did not witness the drug transaction between the middleman and the defendant. Id. at ¶ 16.
 {¶ 25} Smith, Goins, and this case involve controlled buys with confidential informants and unwitting middlemen. Likewise, in these three cases, the police did not search the middlemen, and neither the police nor the informant observed the middlemen purchase drugs during the controlled buys. Thus, the defendants in the three cases raised the issue as to whether the middlemen actually obtained drugs from the controlled buys. We conclude, however, that we need not rely onSmith and Goins to resolve this issue because those cases involve circumstances, not present here, that negated probable cause that the middlemen obtained drugs from the controlled buys.
 {¶ 26} In Smith, the court concluded that the middleman inculpating the defendant to obtain a "`deal'" negated probable cause for the search warrant. Id. at 157. Here, Sergeant Allen's testimony indicates that Tommy spoke with police after the controlled buy. Unlike Smith, however, the affidavit did not contain statements from Tommy that inculpated appellees in order to obtain a deal. Instead, the affidavit described Tommy's actions during the controlled buy before he spoke with police. In *Page 11 Goins, the police did not observe the controlled buys, and the affidavit conveyed uncorroborated details about the controlled buys that the informant provided. Unlike Goins, the police here observed and corroborated portions of the controlled buy.
 {¶ 27} With these factors in Goins and Smith absent here, we conclude that probable cause existed that Tommy bought drugs at Elbern during the controlled buy. In particular, Sergeant Allen's observations and corroboration of the controlled buy provided indicia of reliability on the informant's initial claims about drug trafficking at Elbern. SeeState v. Banna, Cuyahoga App. No. 84901, 2005-Ohio-2614, ¶ 27. Additionally, Sergeant Allen found no crack on the informant or in the informant's car before or after the controlled buy. Thus, we may properly infer that the crack from the controlled buy did not originate from the informant. See State v. Bean (1983), 13 Ohio App.3d 69, 72
(holding that reasonable, common sense inferences are permitted when assessing the legal sufficiency of an affidavit in support of a search warrant if the inferences are based upon facts alleged in the affidavit). Likewise, Tommy did not give the informant crack until after he exited Elbern. Thus, as Sergeant Allen testified and as noted inMejia, we may properly infer that Tommy did not have crack before he entered Elbern because, if Tommy did, he would have sold it to the informant and would not have needed to go to Elbern. See Bean at 72. In referencing Mejia for this conclusion, we find it inapposite that, unlike in that case, the affidavit here did not vouch for the informant's reliability. In concluding that Tommy bought drugs at Elbern during the controlled buy, the primary focus is on Tommy and the informant's conduct, not the informant's statements. Accordingly, we hold that Sergeant Allen's affidavit established probable cause that drug trafficking was taking place at Elbern. *Page 12 
 {¶ 28} In reaching this conclusion, we recognize the great deference we must give to the municipal court's probable cause determination. SeeGeorge at 330. We also reiterate that the probable cause determination only depends on the fair probability of criminal activity at Elbern, not a prima facie demonstration of criminal activity. See Ingold at ¶ 19. Moreover, while the state admitted that the search warrant did not contain a "model affidavit," we emphasize that we must resolve doubtful or marginal cases in favor of upholding the warrant. (Tr. 32.)
 {¶ 29} We acknowledge that the affidavit contains misinformation. InFranks v. Delaware (1978), 438 U.S. 154, 155-156, the United States Supreme Court held that a search warrant is not valid if (1) the defense establishes by a preponderance of the evidence that the supporting affidavit contains a false statement that the affiant included either knowingly and intentionally or with reckless disregard for the truth, and (2) after setting aside the false material, the remaining content does not establish probable cause. Conversely, false statements due to negligence and innocent mistakes do not invalidate a search warrant. Id. at 171. Here, the affidavit indicated that the informant told Sergeant Allen that he saw Robbie sell crack to Tommy at Elbern, but Allen testified that the information about Robbie was merely an assumption.
 {¶ 30} First, Franks applies to the affiant's statements, not to the statements of other individuals. State v. Clark (June 22, 1993), Vinton App. No. 92 CA 485. Thus, Franks does not apply to the informant's statement about Robbie. Second, the record does not dismiss the contention that Robbie sold drugs at Elbern, rather, no further information is provided about Robbie. Accordingly, the preponderance of the evidence does not indicate that the statement about Robbie was false. Third, the affidavit *Page 13 
establishes probable cause that criminal activity was taking place at Elbern without information about Robbie, and we disagree with the trial court's conclusion that the confusion about Robbie suggested "[m]aybe we don't know whose house we were at." (Tr. 34.) Specifically, the informant identified Elbern as a place where drug activity occurred, and the subsequent controlled buy targeted Elbern with a successfully executed drug transaction. Therefore, the information about Robbie in the affidavit does not invalidate the search warrant underFranks. Id. at 155-156.
 {¶ 31} We also acknowledge that Sergeant Allen indicated in the affidavit that, after Tommy returned from Elbern during the controlled buy, Tommy told the informant about drug activity he has seen at Elbern. However, Sergeant Allen testified that he did not hear this conversation after Tommy returned from Elbern, and that the informant told him about this conversation before the controlled buy. Sergeant Allen may have made the statement in the affidavit through negligence or an innocent mistake, however, and the record does not establish by a preponderance of the evidence that Allen made the statement as a knowing and intentional falsehood or with reckless disregard for the truth. SeeFranks at 155-156, 171. See, also, State v. Mobley (May 22, 1989), Warren App. No. CA88-08-063 (stating that search warrants are often made in haste, and, therefore, the law does not require that the information in the supporting affidavits be perfect). But even without the statement, the affidavit still details (1) the informant's initial claim of drug activity at Elbern, and (2) the subsequent controlled buy at Elbern. Thus, probable cause supports the search warrant without the statement, and the statement does not invalidate the search warrant under Franks. Id. at 155-156, 171. *Page 14 
 {¶ 32} For all these reasons, we conclude that Sergeant Allen's affidavit established probable cause to support the search warrant for Elbern. Therefore, the search warrant was valid, and the exclusionary rule did not apply to preclude admission of evidence obtained from the warrant. Cf. Leon; George at 330-331.
 {¶ 33} We further conclude that, even if probable cause did not exist, the police executed the search warrant in good faith underLeon. Jimerson contends that appellant did not preserve this issue for appeal. This is incorrect. Jimerson raised the good-faith doctrine in her suppression motion, and the state raised the doctrine in its responses to both of appellees' suppression motions. An issue is sufficiently preserved for appellate review if raised during briefing on a motion to suppress. State v. Reniff, 146 Ohio App.3d 749,2001-Ohio-4353, ¶ 14. Therefore, we address the applicability of the good-faith doctrine here.
 {¶ 34} Evidence is not subject to exclusion if the police executed a warrant in good faith. Leon at 914-924. The good-faith doctrine does not apply under the following circumstances: (1) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) the issuing judge failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) the affidavit lacked indicia of probable cause and, therefore, rendered official belief in its existence entirely unreasonable, or the warrant was supported by nothing more than a bare bones affidavit; or (4) the warrant was facially deficient because it failed to particularize the place to be searched or the items to be seized. Leon at 914-915, 923. *Page 15 
 {¶ 35} As to the first Leon prong, we have already concluded that the record does not establish that misinformation in the affidavit resulted from knowing and intentional falsehoods or a reckless disregard for the truth. Likewise, we have determined that the misinformation does not negate the probable cause behind the search warrant. Therefore, we hold that the misinformation did not mislead the municipal court into issuing the search warrant.
 {¶ 36} As to the second Leon prong, the record does not establish that the municipal court failed to independently determine whether probable cause supported the warrant. Rather, the municipal court met with the officer who requested the search warrant and placed him under oath. The municipal court also reviewed the warrant before issuing it. These facts demonstrate that the municipal court was neutral and detached, and not a rubber stamp for police, when it issued the search warrant. SeeUnited States v. Caldwell (C.A.6, 2000), 229 F.3d 1154.
 {¶ 37} As to the third Leon prong, we hold that the affidavit here did not lack indicia of probable cause. We have distinguished this case fromSmith and Goins, which concluded that the good-faith doctrine did not apply because the affidavit lacked indicia of probable cause. Therefore, we do not apply these cases to our Leon analysis.
 {¶ 38} The defense also relies on United States v. Weaver (C.A.6, 1996), 99 F.3d 1372, to argue that the affidavit lacked indicia of probable cause. In Weaver, the affidavit conveyed a reliable informant's tip on the defendant's drug activity. Id. at 1375-1376. After concluding that probable cause did not support the warrant, the court held that the police did not execute the warrant in good faith because the affidavit lacked indicia of probable cause. Id. at 1380-1381. The court noted that the affiant had "little *Page 16 
firsthand information and no personal observations" of drug activity. Id. at 1380. Therefore, the court stated that the affiant "should have realized that he needed to do more independent investigative work to show a fair probability" that the suspect was engaging in drug activity. Id. However, Weaver is inapposite. First, Weaver is limited to its facts. United States v. Allen (C.A.6, 2000), 211 F.3d 970, 974. Second, unlike the situation in Weaver, a controlled buy corroborated the informant's tip about drug trafficking at Elbern, and the police observed activity during the drug buy.
 {¶ 39} Likewise, the affidavit here was not bare bones. A bare bones affidavit merely presents "conclusionary assertions" without supporting facts. State v. Nijmeh (Dec. 13, 1996), Montgomery App. No. 15662, citing State v. Johnson (1988), 48 Ohio App.3d 256. Here, the affidavit detailed the controlled buy that corroborated the informant's claim about drug trafficking at Elbern. See State v. Taylor (June 2, 1999), Ross App. No. 98CA2451 (concluding that an affidavit that described a controlled buy was not bare bones).
 {¶ 40} Lastly, as to the fourth Leon prong, there is no allegation that the warrant failed to particularize the place to be searched or the items to be seized. Therefore, this prong does not apply to bar application of the good-faith doctrine here.
 {¶ 41} Accordingly, pursuant to Leon, we conclude that the police executed the search warrant at Elbern in good faith. Therefore,Leon precluded the trial court from suppressing evidence obtained from the search warrant. Having also determined that probable cause supported the search warrant, we hold that the trial court erred in granting appellees' suppression motions. *Page 17 
 {¶ 42} Consequently, we sustain appellant's single assignment of error. Thus, we reverse the judgments of the Franklin County Court of Common Pleas and we remand these causes to that court for proceedings consistent with this opinion.
Judgments reversed and causes remanded.
 PETREE and BROWN, JJ., concur. *Page 1