
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) ) | No. 73543-8-I |
| v. | ) ) | |
| | ) | UNPUBLISHED OPINION |
| TERRENCE PATRICK ECKHART, | ) ) | |
| Appellant. | ) ) | FILED: October 3, 2016 |

DWYER, J. — Terrence Eckhart repeatedly exposed himself to his neighbor as she crossed their common driveway. A jury convicted him of two counts of nonfelony indecent exposure. RCW 9A.88.010(1). By special verdicts, the jury also found that he had a prior conviction for a sex offense and committed one of the current offenses with sexual motivation. The prior conviction verdict elevated the indecent exposure convictions to felonies. RCW 9A.88.010(1)(c).

On appeal, Eckhart maintains that one of the convictions and both special verdicts are not supported by sufficient evidence. He contends the convictions must be reversed and remanded for, at most, the entry of one lesser included offense. The State contends the convictions and sexual motivation verdict are supported by sufficient evidence, but concedes the special verdict on the prior sex offense must be reversed due to an evidentiary error. Without citing

authority, the State asserts that the case must be remanded solely for a new trial on the prior conviction element of felony indecent exposure. We reverse and remand for a new trial on all elements of the charged offenses.

I

Based on allegations that Eckhart repeatedly exposed himself to his neighbor, S.W., the State charged him with two counts of indecent exposure—one occurring on January 7, 2014, and the other occurring between September 1, 2013 and December 31, 2013. The State alleged that both counts were committed with sexual motivation and were felonies because Eckhart had a prior conviction for attempted child molestation. RCW 9A.88.010(1)(c).

Prior to trial, the court granted Eckhart's motion to bifurcate the trial, reserving the issue of whether Eckhart had previously been convicted of a sex offense until after the jury returned verdicts on the elements of nonfelony indecent exposure and the sexual motivation allegation.

At trial, the State's evidence established that Eckhart, his wife, and his children lived next door to S.W., who lived alone, at the time of the charged incidents. The two homes shared a driveway which Eckhart's side door faced.

S.W. testified that, prior to the charged incidents, Eckhart's behavior started to make her "[v]ery uncomfortable." He told her she was "cute," invited her to drink beers with him while his wife was away, brought her chocolates, and offered her prescription pain killers. On several occasions, S.W. noticed a shirtless Eckhart waving to her from his open side door as she got in her car for work.

2

In September 2013, Eckhart again stood in his open doorway as S.W. left for work, but this time he was completely naked. He looked straight ahead, and though S.W. saw his penis, she did not see whether it was erect. She testified she was "shaken up" and "scared" by the incident. She also began to realize that Eckhart's behavior only occurred when his wife's car was gone. She did not call the police, however, because she was worried about disrupting Eckhart's family situation.

A short time later, an essentially identical incident occurred. Eckhart again stood naked in his doorway. S.W. saw his penis and felt "shaken up, nervous, [and] uncomfortable."

In January 2014, S.W. walked to her car and then turned back to get something from her house. She saw Eckhart standing naked in his open doorway. She testified that "there was some movement going on, and it looked like he was masturbating to me." S.W. "quickly went back and forth" between her house and her car before she left. She only glanced toward Eckhart for a few seconds. When asked how long Eckhart stayed in his doorway making the motion with his hand, S.W. said "[t]wo or three minutes."

S.W. later elaborated on the January incident, testifying that Eckhart was "kind of sitting on the floor without any clothes on and it looked like there was some motion, hand motion, kind of a sprawled position that he was in, but sitting up instead of standing." She described the hand motion as an "up and down" motion "[a]round his groin area." When asked if she saw anything in Eckhart's

3

hand, S.W. said "No." When asked if she saw his penis, she said "Yes." She did not know if his penis was in his hands.

After the first phase of the trial, the court instructed the jury on the elements of nonfelony indecent exposure and the allegation of sexual motivation. The jury found Eckhart guilty of both counts of indecent exposure but found only one of the counts was committed with sexual motivation.

In the second phase of the trial, the prosecutor submitted a certified copy of a 1997 judgment and sentence for first degree attempted child molestation. The only evidence, other than a physical description, linking Eckhart to the judgment and sentence was the testimony of Seattle Police Detective Eugene Foster. Detective Foster testified during the first phase of the trial that he learned Eckhart's date of birth by performing a "computer check." When the prosecutor asked Foster to recite Eckhart's date of birth, Eckhart objected on the grounds of hearsay, lack of personal knowledge, and foundation. The court sustained Eckhart's objection, and the prosecutor asked to be heard at a later time.

Outside the jury's presence, the prosecutor argued that Foster's testimony was not hearsay because the State offered it for "purposes of identification simply because it's the defendant's date of birth by way of fact." The prosecutor also argued that Eckhart's date of birth was within Foster's personal knowledge because Foster learned it by checking the Seattle Police Department database. The court rejected the prosecutor's arguments but suggested the evidence might be admissible as a public record. Eckhart again objected, arguing that the State could not lay a proper foundation for a public records exception, and that even if

4

it could, Foster's testimony would violate the best evidence rule. The court disagreed and admitted Foster's proposed testimony under the public records exception. The court noted that it would have been preferable for the State to offer "a certified copy of a record somewhere, that would clearly meet the public record exception." Foster then testified that Eckhart's date of birth was May 2, 1966.

Following the second phase of the trial, the court instructed the jury to return special verdicts as to whether Eckhart had a prior conviction for a sex offense and thus committed *felony* indecent exposure. The jury found that Eckhart had previously been convicted of a sex offense.

Eckhart moved for a new trial, arguing that the court erred in admitting the testimony regarding his date of birth. The trial court denied the motion. Eckhart appeals.

II

Eckhart contends that his convictions are not supported by sufficient evidence. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Salinas, 119 Wn.2d at 201.

A

To convict Eckhart of indecent exposure under the instructions for count 2, the State had to prove that between September 1 and December 31, 2013, Eckhart intentionally made an "open and obscene exposure of [his] person" knowing "that such conduct was likely to cause reasonable affront or alarm." Instruction 11. Eckhart contends the State "did not present sufficient evidence that [he] made an obscene exposure, nor that he intended to." Br. of Appellant at 8. We disagree.

An exposure is "obscene" if it is "'a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others.'" State v. Vars, 157 Wn. App. 482, 490, 237 P.3d 378 (2010) (quoting State v. Galbreath, 69 Wn.2d 664, 668, 419 P.2d 800 (1966)). It is undisputed that Eckhart exposed his naked body to S.W. twice during the charging period in almost exactly the same manner. Eckhart contends, however, that "[b]esides his nakedness, there was nothing sexual about his behavior" and that "[w]ithout more, it cannot be a crime just to be naked . . . within one's dwelling, even if a nearby neighbor happened to have caught an unwelcome glimpse." Br. of Appellant at 10-11.

Eckhart was not merely naked in his dwelling. S.W.'s testimony established that he twice opened his door and faced the shared driveway, completely naked, just as S.W. was leaving for work. Eckhart made no attempt to cover himself, turn away, or close his door. These acts occurred against a

backdrop of prior overtures, innuendo, and half naked exposures. Viewed in a light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that the exposures were intentionally obscene.

For many of the same reasons, the evidence was sufficient to infer that Eckhart knew the exposures were likely to cause reasonable affront or alarm. As the State points out, S.W. testified that she rebuffed Eckhart's social advances, closing the door as fast as she could when he came to her house, or not answering the door at all when he knocked. She testified that she avoided conversations with Eckhart and compared their interactions to a movie scene in which a neighbor continues to talk to an uninterested neighbor as the latter closes a garage door between them. Viewed in a light most favorable to the State, the evidence was sufficient for a rational trier of fact to infer that Eckhart knew his conduct was unwelcome and would likely cause S.W. reasonable affront or alarm.

B

Eckhart next contends the evidence was insufficient for a rational trier of fact to find that he committed count 1 with sexual motivation. A court may impose an exceptional sentence if a crime was committed with sexual motivation, i.e., for purposes of sexual gratification. RCW 9.94A.835(2); RCW 9.94A.030(47). An exceptional sentence may not, however, be based on factors "inherent to the offense for which a defendant is convicted." State v. Thomas, 138 Wn.2d 630, 636, 980 P.2d 1275 (1999). Only factors "other than those necessarily considered by the Legislature in computing the presumptive range of

the offense will justify an extraordinary sentence." State v. Mejia, 111 Wn.2d 892, 902, 766 P.2d 454 (1989).

Eckhart argues that the only evidence of sexual gratification was his masturbation, that the same evidence was inherent in the underlying offense of indecent exposure because it proved his conduct was obscene and lascivious, and that it was therefore insufficient to support the jury's finding of sexual motivation. This argument is flawed in several respects.

First, whether a sentencing factor is inherent in an underlying offense does not turn on whether the factor may have been part of the proof of the underlying offense; rather, it turns on whether the legislature necessarily considered the factor in prescribing punishment for the underlying offense. Thomas, 138 Wn.2d at 635. Nothing in RCW 9A.88.010(1) or the relevant case law indicates that an act done for purposes of sexual gratification is inherent in the crime of indecent exposure. As our previous discussion of count 2 demonstrates, it is sufficient, for purposes of indecent exposure, to show a lascivious or indecent exhibition of genitalia. Vars, 157 Wn. App. at 490; State v. Queen, 73 Wn.2d 706, 710, 440 P.2d 461 (1968) (lascivious and indecent are synonyms). There is no requirement that the exhibition be for the purpose of sexual gratification. See Queen, 73 Wn.2d at 710. Thus, Eckhart's masturbation was not inherent in the crime of indecent exposure.

Second, even accepting Eckhart's claim that evidence inherent in the proof of the underlying offense cannot support an exceptional sentence, his argument fails. In our discussion of count 2 above, we concluded that Eckhart's

8

acts of exposing himself in his doorway, together with his history of half-exposures, overtures and innuendo, were sufficient to prove an indecent or lascivious exhibition of his genitals. The same is true of count 1. The State's evidence showed that Eckhart sat or stood naked in his doorway for two or three minutes while S.W. walked back and forth between her house and her car. Viewed in the context of Eckhart's history of exposures, overtures, and innuendo with S.W., this evidence was sufficient, *without the additional evidence of masturbation*, to support Eckhart's conviction on count 1. Thus, the evidence of masturbation was not necessary to prove the underlying offense and supported the jury's finding of sexual motivation.

III

Eckhart contends, and the State concedes, that the trial court abused its discretion in admitting hearsay testimony regarding his birthdate and denying his motion for a new trial. The parties agree that this testimony was prejudicial because it was the only evidence tying Eckhart to the prior sex offense that elevated the indecent exposure charges to felonies. The parties disagree, however, on the appropriate remedy.

Eckhart contends the error results in insufficient evidence to support his convictions and requires either reversal and dismissal or "[a]t most the matter may be remanded with instructions to enter a conviction for a lesser-included offense." Reply Br. of Appellant at 5. Citing State v. Jasper, 174 Wn.2d 96, 120, 271 P.3d 876 (2012), the State contends the proper remedy is a remand for a new trial. Jasper is controlling.

9

In Jasper, the court considered the proper remedy for the erroneous admission of testimonial certifications regarding the existence or nonexistence of a public record. In concluding that a new trial, rather than dismissal, was the proper remedy, the court stated:

> After holding the admission of exhibit 10 violated Cienfuegos's right to confrontation, the superior court ordered that the conviction be vacated and the case remanded for dismissal. . . . The court stated that "[w]ithout this improperly admitted exhibit, the evidence is likely insufficient to support his conviction." . . .
> . . . The superior court erred by examining the sufficiency of the evidence after excluding the unconstitutionally admitted exhibit. As made plain by the United States Supreme Court, "*the Double Jeopardy Clause allows retrial when a reviewing court determines that a defendant's conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction.*" Lockhart v. Nelson, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). The appropriate remedy here is to reverse the defendants' convictions . . . and to remand for new trials.

Jasper, 174 Wn.2d at 120 (emphasis added). Stated another way,

> [i]f the evidence, *including that erroneously admitted,* Lockhart v. Nelson, 488 U.S. 33, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988), was insufficient as a matter of law, the double jeopardy clause entitles [the defendant] to dismissal with prejudice. Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). *Otherwise, he is entitled only to a new trial.*

State v. Stanton, 68 Wn. App. 855, 867, 845 P.2d 1365 (1993) (emphasis added). Eckhart does not claim that the evidence in this case, including the erroneously admitted testimony, was insufficient to prove the predicate offense. Accordingly, the appropriate remedy is a new trial.[1]

---

[1] We note that despite the State's express reliance on Jasper, Eckhart did not address Jasper in his reply brief. Instead, Eckhart cites inapposite cases in which the State simply failed

Without citing authority, the State contends the new trial should be limited to the prior conviction element of felony indecent exposure. We decline to consider this contention. RAP 10.3(a) (6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellate court need not consider arguments unsupported by authority).

We accept the State's concession of error, reverse the convictions, and remand for a new trial.

---

to offer any evidence whatsoever linking the defendant to material documentary evidence. See State v. Ceja Santos, 163 Wn. App. 780, 784-86, 260 P.3d 982 (2011); State v. Huber, 129 Wn. App. 499, 503-04, 119 P.3d 388 (2005).